Lionel EDWARDS, Petitioner–Appellant,

v.

Robert H. BUTLER, et al., Respondents–Appellees.

No. 88–3665

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 1, 1989.

Lionel Edwards, Angola, La., pro se.

Terry M. Boudreaux, Dorothy A. Pendergast, Asst. Dist. Attys., John Mamoulides, Dist. Atty., Research & Appeals, Gretna, La., for respondents-appellees.

Before KING, JOHNSON and JOLLY, Circuit Judges.

PER CURIAM:

In this *pro se* appeal of the district court's denial of his section 2254 habeas petition, Lionel Edwards alleges numerous violations of his constitutional rights during state court proceedings. Finding Edwards' assertions meritless, we affirm.

I

At about 9 a.m. on April 11, 1980, Janetta Doty was asleep on a couch in her apartment when she was awakened by two men who put a cloth sack over her head and led her to an upstairs bedroom. Through the cloth sack Doty could see that one of the assailants was armed with a knife. In the

upstairs bedroom the two men stripped her and then each raped her. Following the rape Doty was taken downstairs. Before the assailants left the house, Doty heard one of them moving heavy objects from one of the upstairs bedrooms. After they left, Doty found that a stereo and television had been taken from one of the upstairs bedrooms. Doty testified that she could see through the cloth sack and recognized as one of the assailants Lionel Edwards, whom she had previously met on one occasion. She also identified Edwards in a police photo line-up. Doty identified co-defendant Isiah Vining as the other assailant and the one armed with a knife.

A neighbor, Debbie Kerwin, testified that on the morning of April 11, she saw Edwards and Vining standing by a car in front of the Doty apartment. Another neighbor, Nedra Martin, saw Edwards and Vining leave the Doty house about 10:00 a.m. on the morning of April 11 with a television and stereo; Martin saw the defendants place the objects in a car.

After reporting the rape to the police, Doty was seen by Dr. Barbara Deming. Dr. Deming's evaluation of Doty did not show the presence of semen. Dr. Deming testified, however, that Doty showed signs of trauma and that this was consistent with Doty's statement that she was raped. A clinical psychologist and a clinical social worker who evaluated Doty some time after April 11, testified that her behavior was consistent with someone who suffered a violent and traumatic sexual assault.

On October 6, 1980, Edwards and Vining were convicted by a Jefferson Parish Louisiana jury of the aggravated rape of Janetta Doty. Edwards was sentenced to a mandatory sentence of life without parole pursuant to La.Rev.Stat.Ann. § 14:42. His petition for post-conviction relief was denied by the Louisiana courts. *Edwards v. Blackburn*, 496 So.2d 343 (La.1986).

Edwards then brought this 28 U.S.C. § 2254 habeas corpus petition containing the following contentions: his right against self-incrimination was violated when police officers took his photo following his arrest and later used this photo in a photo line-up

where Edwards was identified; the state improperly introduced evidence at trial concerning an extraneous offense; the jury was not properly impanelled under Louisiana law; the prosecutor engaged in improper comments; the court improperly charged the jury; the evidence was insufficient to prove Edwards' guilt beyond a reasonable doubt; the Louisiana rape statute is unconstitutionally vague because the law does not provide a standard for distinguishing forcible rape from aggravated rape; his mandatory sentence of life without parole is unconstitutionally excessive; and the trial court failed to state its reasons for imposing the sentence as required by Louisiana law.

The district court held that there was no merit to any of Edwards' claims and thus denied the petition. Edwards filed a timely notice of appeal.

## II

### A.

Edwards' first contention is that the state's evidence was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged. Edwards was charged with and convicted of aggravated rape under La.Rev.Stat.Ann. § 14:42(A)(2) (West 1986). The statute defines "aggravated rape" as anal or vaginal intercourse without the consent of the victim "[w]hen the victim is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution." In *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979), the Supreme Court held that where a habeas petitioner challenges the sufficiency of the evidence on due process grounds, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Given Doty's testimony that Vining was armed with a knife and that Edwards joined in the rape, as well as the testimony of her neighbors and the medical and psy-

chological experts, we hold that a reasonable jury could easily conclude beyond a reasonable doubt that Edwards raped Doty and that her resistance was prevented by "threats of great and immediate bodily harm." Thus, Edwards' insufficiency of the evidence argument is without merit.

### B.

Edwards contends that the Louisiana aggravated rape statute is unconstitutionally vague because the definition of aggravated rape at the time of the offense was indistinguishable from the statutory definition of forcible rape. La.Rev.Stat.Ann. § 14:42.1(A) (West 1986) defined forcible rape as

> a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

At the time of the offense La.Rev.Stat. Ann. § 14:42(A)(2) (West 1986) defined aggravated rape as

> a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim ... [w]hen the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

Forcible rape is punishable by imprisonment at hard labor for not less than two nor more than forty years. La.Rev.Stat. Ann. § 14:42.1(B). Aggravated rape is punishable by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La.Rev.Stat. Ann. § 14:42(C).

■ In *State v. Parish,* 405 So.2d 1080, 1086–87 (La.1981), the Louisiana Supreme Court held that the two statutes are distinguishable based on the "degree of force employed and the extent to which the victim resists." A conviction for aggravated rape requires a showing of a greater degree of force than one for forcible rape, a lesser included offense. The Louisiana Supreme Court concluded that the legislature intended to divide coerced sexual intercourse into two categories, assigning the jury the function of fixing the range of permissible punishment for offenders by returning a verdict that fits the crime and degree of force employed. *Id.* at 1087.

■ The fact that the two crimes may overlap to some degree does not make the Louisiana rape statute unconstitutionally vague. In *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979), the United States Supreme Court rejected a void-for-vagueness challenge to overlapping federal firearm statutes, reasoning as follows:

> Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.

*See also United States v. Brewer,* 528 F.2d 492, 498 (4th Cir.1975). Since the Louisiana rape statute clearly defines the conduct prohibited and punishment authorized, it is constitutional under *Batchelder.*

### C.

Edwards next argues that the trial court violated La.Code Crim.Proc.Ann. art. 784 (West 1981), which provides that "[i]n selecting a [jury] panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court." Edwards contends that the jurors were not called randomly, but, in violation of Louisiana law, were selected by the court in the order that the jurors' names appeared on a jury commission list.

■ It is not clear from Edwards' *pro se* petition and brief what the factual basis is for his claim that the state violated article 784 since the record contains no evidence

that the jurors were not selected at random from a panel of jurors. In any event, the alleged violation of a state procedural rule, without more, is not a constitutional violation or a violation of federal law, and thus not a cognizable ground for habeas relief. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984).

### D.

Edwards argues further that his right against self-incrimination and his right to counsel were violated when the police photographed him following his arrest and later used the pictures in a photo line-up in which the victim identified Edwards. Edwards states that at the time these photographs were taken he was not advised that they would be used against him and that he did not have counsel nor was he advised of his right to counsel.

■ At the outset, we note that these photographs were color polaroids, not "mugshots" indicating that the defendant had a criminal history. Thus, they were not prejudicial as were the photographs admitted at trial in *United States v. Rixner*, 548 F.2d 1224 (5th Cir.1977), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977).

■ Nor was Edwards' fifth amendment right against self-incrimination violated here. In *Schmerber v. California*, 384 U.S. 757, 760–64, 86 S.Ct. 1826, 1830–32, 16 L.Ed.2d 908 (1966), the Supreme Court held that the privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature"; the privilege does not apply to " 'real or physical evidence' " such as compulsion to submit to a photograph.

■ Neither did this procedure violate Edwards' sixth amendment right to counsel. The right to counsel attaches at critical stages of the criminal proceedings. *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). The taking of Edwards' photograph was not a critical stage of the proceeding. *Cf.*

*Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967) (taking of handwriting exemplar not a critical stage); *United States v. Terry*, 702 F.2d 299, 314 (2d Cir.1983) (no right to counsel at taking of palm print), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 and 464 U.S. 992, 104 S.Ct. 482, 78 L.Ed.2d 680 (1983); *Payne v. Thompson*, 622 F.2d 254 (6th Cir.) (hair and semen samples), *cert. denied*, 449 U.S. 1063, 101 S.Ct. 788, 66 L.Ed.2d 607 (1980). Moreover, the Supreme Court has held that an accused does not have the right to the presence of counsel when the prosecution presents photographs to witnesses for identification purposes. *United States v. Ash*, 413 U.S. 300, 317–21, 93 S.Ct. 2568, 2577–79, 37 L.Ed.2d 619 (1973).

### E.

Edwards next contends that he was denied a fair trial when the prosecution was allowed to introduce evidence concerning an alleged theft with which Edwards was not charged. During trial the prosecution introduced evidence concerning the theft of the television and stereo from the victim's house. Edwards argues that this evidence was irrelevant because the alleged theft occurred after the completion of the alleged rape.

■ When a federal court reviews state court evidentiary rulings on a petition for habeas corpus, it will grant relief only if the state court error is sufficiently egregious to render the entire trial fundamentally unfair. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir.1986) (citation omitted). The introduction of evidence concerning the theft of the television and stereo by Edwards and Vining was not erroneous, however. Under Louisiana law, evidence concerning *res gestae* is always admissible. La.Rev.Stat.Ann. § 15:447 (West 1981). To constitute *res gestae* the act must be an immediate concomitant of the charged offense. La.Rev.Stat.Ann. § 15:448 (West 1981). The district court correctly ruled that evidence concerning the theft of the television and stereo were part of the *res gestae*. The theft occurred immediately af-

ter the rape and thus was part of the same continuous criminal transaction.

In any event, this evidence was relevant to the issue of the assailants' identities. See La.Rev.Stat.Ann. § 15:441 (West 1981). Janetta Doty testified that before the assailants left her house she could hear one of them moving heavy objects down the stairs. Immediately after the rape she noticed that a television and stereo had been taken from an upstairs bedroom. Doty's neighbor stated that on the same morning and at about the same time as the rape, she saw Edwards and Vining leave the Doty house with a television and a stereo that they put in the trunk of their car. This testimony helped identify Edwards and Vining as the rapists. Edwards' challenge to this evidence on the basis of relevance thus is spurious. *See Corpus v. Estelle,* 571 F.2d 1378, 1381 (5th Cir.), *cert. denied,* 439 U.S. 957, 99 S.Ct. 359, 58 L.Ed.2d 350 (1978).

### F.

■■ During closing argument the prosecutor stated to the jury: "[T]hese defendants are not only guilty of forcible rape, they're guilty of aggravated rape." Without further explanation Edwards states that the prosecutor's reference to forcible rape was improper because it cautioned "the jury against considering lesser responsive verdicts."

Forcible rape is a lesser included offense of and a responsive verdict to aggravated rape. La.Code Crim. Proc. art. 814(A)(8) (West 1981). The trial court instructed the jury on both forcible rape and aggravated rape. Under La.Code.Crim.Proc.Ann. art. 774 (West 1981), closing argument must be confined to admitted evidence, conclusions of fact to be drawn from the evidence, and the law applicable to the case. This article authorizes a prosecutor to suggest to the jury an appropriate verdict. *See, e.g., State v. Feet,* 481 So.2d 667, 677–78 (La.Ct. App.1985), *writ denied,* 484 So.2d 668 (La. 1986). Edwards' contention that the prosecution acted improperly thus is meritless.

### G.

Edwards next contends that the trial court's instructions to the jury were improper and denied him a fair trial. The district court noted that Edwards' defense counsel did not object to the alleged errors and thus under Louisiana law the assignments of error were subject to procedural bar. The court also noted that although these issues were raised in Edwards' post-conviction petition, the state court denied relief without stating its reasons. The district court then looked to our decision in *Bates v. Blackburn,* 805 F.2d 569, 573–75 (5th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987), in which we held that where a state court does not state its reasons for denying relief, we will assume the state court relied on procedural default if the state court has used procedural default in similar cases to preclude review of a claim's merits. The district court found that the Louisiana courts strictly applied the contemporaneous objection rule, and thus, relying on *Bates,* held that Edwards' claims were procedurally barred.

Recently, however, in *Harris v. Reed,* — U.S. ——, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), the Supreme Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case ' "clearly and expressly" ' states that its judgment rests on a state procedural bar" (citations omitted). Since there was no such "clear and express" statement here, we address the merits of Edwards' claims with respect to the instructions.

#### (a)

First, Edwards contends that the trial court failed to instruct the jury, as required under La.Code Crim.Proc.Ann. art. 804(A)(2) (West 1981), that reasonable doubt may arise from the lack of evidence. This claim is refuted by the trial transcript. The instruction as given reads: "The burden is upon the State to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the

defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence." Thus, Edwards was properly instructed as to the state's burden of proof.

### (b)

Edwards' second contention pertains to the timing of the expert witness instruction. During deliberations the jury returned and requested additional instructions on the difference between forcible rape and aggravated rape. The trial court stated the law as it relates to forcible and aggravated rape and then gave the jury the standard instruction on expert witnesses. The judge explained that the expert witness instruction had been inadvertently left out of his initial instructions. Edwards argues that the expert witness instruction was intended to and had the effect of bolstering the state's case because it focused the jury's attention on the state's expert testimony after the jury had already expressed its doubts concerning the sufficiency of the evidence.

A review of the trial court's initial instruction shows that the expert witness instruction was indeed omitted. The trial court's belated expert witness instruction, however, did not render Edwards' trial fundamentally unfair and thus deny Edwards due process. His claim that this was intended to or had the effect of bolstering the state's case is meritless. In any event, we see no evidence that he was prejudiced.

### (c)

■ We finally address Edwards' third contention regarding the instructions. At the request of the trial judge, the jury returned to the courtroom and the judge advised the jury that because it was late in the afternoon the court would recess and the jury would be sequestered overnight. After the jury foreman then told the judge that the jury was in the process of taking a vote, the judge said: "Okay, go ahead, because I was ready to send you off to a motel for the night." The jury later returned and announced that it had found Edwards and Vining guilty of aggravated rape. Edwards argues that the judge's remarks constituted an *Allen* charge which coerced the holdout jurors into surrendering their views in favor of the majority's.

The *Allen* charge derives its name from *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and refers to "supplemental instructions urging a jury to forego their differences and come to a unanimous decision." *United States v. Bottom,* 638 F.2d 781, 786 n. 4 (5th Cir. 1981). The trial court in the present case did not urge the jurors to set aside their differences; thus the judge's remarks did not constitute an *Allen* charge. To the contrary, the judge's remarks show that he was inclined to let the jury take as long as it wanted to reach a verdict. Thus, we conclude that this claim, as well as the previous two claims with respect to instructions, is meritless.

### H.

■ Louisiana Revised Statute Ann. § 14:42(C) (West 1986) provides that aggravated rape is punishable by "life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." Edwards was sentenced to life pursuant to this provision. He contends that section 14:42 is unconstitutional on its face and as applied because the sentence is excessive.

The eighth amendment incorporates the principle that "a punishment should be proportionate to the crime." *Solem v. Helm,* 463 U.S. 277, 285–88, 103 S.Ct. 3001, 3007–09, 77 L.Ed.2d 637 (1983). In *Solem* the Supreme Court set forth three objective factors that should guide a court's eighth amendment proportionality analysis. The court should first consider "the gravity of the offense and the harshness of the penalty." *Id.* at 291–92, 103 S.Ct. at 3010–11. The court should then consider "the sentences imposed on other criminals in the same jurisdiction," and "the sentences imposed for commission of the same crime in other jurisdictions." *Id.*

In applying the first prong of the *Solem* test, we recognize that the offense is extremely serious and the penalty severe. In turning to the second prong, however, we

note that Edwards' sentence of life without parole is not greater than the sentence the Louisiana legislature has mandated for crimes involving a comparable or lesser degree of violence. The Louisiana statutes provide for life imprisonment without parole for aggravated kidnapping, La.Rev. Stat.Ann. § 14:44 (West 1986), and heroin dealing, La.Rev.Stat.Ann. § 40:966 (West Supp.1989). In *Terrebonne v. Butler*, 848 F.2d 500, 503–07 (5th Cir.1988) (en banc), we held that La.Rev.Stat. § 40:966 mandating life imprisonment without parole for heroin dealing did not violate the eighth amendment's proportionality requirement. Since aggravated rape involves a far greater degree of direct personal violence against a victim than the heroin transaction in *Terrebonne*, and because its effects are equally devastating emotionally, and often permanently scarring, we hold that life imprisonment for this crime does not violate the eighth amendment proportionality requirement. *See Terrebonne v. Butler*, 848 F.2d at 504.

Neither is the Louisiana statute disproportionate to the penalty imposed in other jurisdictions. At least four other jurisdictions provide for a life sentence for rape convictions. *See* Ala.Code §§ 13A–6–61 and 13A–5–6 (1987); Md.Code Ann. Art. 27, § 462 (1987); Mich.Stat.Ann. § 28.788(2) (Callaghan 1988) and Mich.Comp.Laws Ann. § 750.5206 (West 1988); Mo.Rev.Stat. § 566.030 and 558.011 (1988). It is true that none of these other state statutes require a mandatory life sentence without parole; in *Terrebonne v. Butler*, 848 F.2d at 504–05, however, we held that this distinction was not sufficient to make a statute requiring a mandatory sentence of life without parole unconstitutionally disproportionate. Thus, life without parole for aggravated rape under the Louisiana statute does not offend the eighth amendment proportionality analysis of *Solem v. Helm*, and Edwards' eighth amendment claim is meritless.

## I.

Edwards also contends that the trial court erred by failing to state for the record its reasons for imposing sentence as required by La.Code Crim.Proc.Ann. art. 894.1(C) (West 1984). He argues that defense counsel was deficient for failing to object on this account at trial.

It is not clear what the factual basis is for this claim since the trial judge stated on the record that the court imposed a life sentence without parole because the sentence was mandatory under La.Rev.Stat. Ann. § 14:42. In any event, and as previously discussed, a procedural error under state law is not a basis for habeas relief. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). Finally, as to the claim that defense counsel was deficient, since Edwards failed to raise ineffective assistance of counsel as a distinct claim below, we decline to consider it on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976).

### III

For the foregoing reasons, the judgment of the district court is

AFFIRMED.